# Oldacre *v.* Stuart.

## *Action on a Promissory Note.*

1. *Promissory note; want of consideration.*—When the maker of a note is under no legal or moral obligation to the payee, and the execution of the note is a mere gratuitous note on the part of the maker, who is not under any liability to the payee, such note is without any consideration and can not be enforced by the original payee in a court of law or equity.

[Oldacre v. Stuart.]

2. *Same; same; when new note also without consideration.*—Where, a promissory note is given without any consideration therefor, the repeated promises to pay do not prevent the maker from insisting in a suit thereon that there was no consideration.for the note; and a new note executed by the maker for the original note is likewise without consideration, unless a new consideration has intervened.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. H. C. SPEAKE.

The facts of the case are sufficiently stated in the opinion.

W. R. FRANCIS, for appellant.—The note sued on in this case was without consideration and can not be enforced.—Bishop on Contracts, § § 77, 78. "The assumption of a supposed liability, which in truth has not a foundation is not a sufficient consideration for a valid promise—a promise upon which an action can be maintained."—*Maull v. Vaughn,* 45 Ala. 134. The giving of a note and making repeated promises to pay does not prevent the debtor from insisting that there was no consideration for the note, unless a new consideration had intervened, or the promise had induced some action on the part of the plaintiff, from which injury to him would follow.—*Ware v. Morgan,* 67 Ala. 461; *Head v. Baldwin,* 83 Ala. 132.

E. W. GODBEY, *contra.*—The voluntary character of the settlement and adjustment of what was unliquidated and uncertain, the repeated ratification, renewal, and partial execution, the great length of time elapsed, preclude, at this late day, any inquiry into the existence of an original consideration *vel non.*—*Grandin v. Grandin,* 9 Atl. Rep. 756, 759. The failure of the defendant as bailee, "to show the circumstances acquitting himself of a want of care" or "to give any such explanation of his neglect to restore the property entrusted to him as would enable the bailor to test his good faith" or to show one single fact or circumstance respecting the fire or its origin, fixes the responsibility upon defendant, and furnishes a sufficient consideratiion for the note.—*Prince*

[Oldacre v. Stuart.]

v. Ala. State Fair, 106 Ala. 340; Boies v. Hartford etc. R. Co., 9 Amer. Rep. 347; Woodruff v. Painter, 150 Pa. St. 91; Swem v. Green, 9 Col. 359.

HARALSON, J.—Suit by appellee, plaintiff below, against appellant, the defendant, on a promissory note for $823.79, dated 10th October, 1893, payable ten days after date. It was tried by and before the presiding judge, a jury having been waived, resulting in a finding and judgment in favor of the plaintiff.

There was no conflict in the evidence between the plaintiff and the defendant on the main question at issue. The contract out of which the note grew was, that the plaintiff, who lived at Decatur, Alabama, should furnish, which he did, fifteen hundred dollars' worth of goods to defendant, which he was to sell at Milton's Bluff in Lawrence county. The defendant was to bear all the expense of the business, including house rent, was to sell the goods and receive one-half of the profits for his services. About two months after the goods were sent by plaintiff to defendant and placed in store at the place at which they were to be sold, the storehouse and the goods were destroyed by fire, without any fault or neglect, so far as is made to appear, on the part of the defendant. Defendant had sold some of the goods, and a few days before the fire, he sent plaintiff $100 of the proceeds of their sale. The defendant testified that the goods belonged to the plaintiff, and he had no interest in them, and got one-half of the profits for his services; and the plaintiff testified to nothing in conflict with this statement. He also testified, that a few days after the goods were destroyed, he agreed to pay the plaintiff one-half the value of the same, and gave him a paper writing to that effect.

The plaintiff testified, that this paper, which he called the first note, was payable in three instalments, the first for $200 payable in February, 1895, the second for same amount, payable in April following, and the balance whenever it was possible for defendant to pay it; that he became anxious to get a new note, because the statute of limitations was about to run on the first obligation,

and he presented to defendant the new note,—the one sued on,—and asked him to sign it, which he did; that there was nothing said about the first or old note, when the new one was given, and that he merely presented the new one and asked him to sign it, and he did so. The defendant, as to this, testified that after he had executed the note in suit, the plaintiff either gave or sent him the first note or paper writing he had executed, and he destroyed it. As to the giving of the first note or obligation, the plaintiff testified: "When the goods were burned, Oldacre came up after the fire and agreed to pay me for one-half the value of the goods. It was his own voluntary act. I did not require it of him. He gave me his note for $713.16. He said he thought that would be right. This was October 21st, 1884, and the goods were burned the 19th October, 1884." He also proved that defendant, before he gave the last note, had paid plaintiff, from one time to another, $200 on the old one.

The plaintiff also introduced, against the objection of defendant, a number of letters written by him to plaintiff in which he recognized his obligation to pay and his desire and promises to do so, as soon as he could.

From the foregoing it will appear that the defendant's renewed obligation stands, as for the consideration for its making, on precisely the same consideration, no more and no less, as that which supported the first obligation. If the first was wanting in consideration, so was the latter (*Stark v. Henderson* 30 Ala. 438; *Russell v. Wright,* 98 Ala. 652) ; and the making of repeated promises to pay, does not prevent the maker from insisting that there was no consideration for the note, unless a new consideration had intervened, which was not the case in this instance.—*Ware v. Morgan,* 67 Ala. 461. There had been no dispute between the parties, as to the ownership of the goods furnished by plaintiff and destroyed by fire, nor as to the contract that existed between them under which they were furnished to and received by defendant, nor as to any obligation of defendant to plaintiff arising out of any alleged fault or neglect of defendant out of which their destruction might have originated, nor was the note sued on, the outgrowth of

[Pollard, Assignee, *et al.* v. Southern Fertilizer Co.]

any compromise touching any of these matters; but, as plaintiff himself testified, the giving of the note was defendant's own voluntary act, and that he, the plaintiff, did not require it of him. It had no value or meritorious consideration to support it. The defendant was under no legal or even moral obligation to give it. Its giving was merely gratuitous on his part. A promise based on such a consideration is not recognized and can not be enforced in a court of law or equity.—*Maull v. Vaughn* 45 Ala. 134; *Hubbard v. Allen*, 59 Ala. 283; *Head v. Baldwin*, 83 Ala. 132; *Ezzell v. King*, 93 Ala. 470; *Russell v. Wright*, 98 Ala. *supra*.

The judgment of the court below is reversed, and one will be here rendered in favor of the defendant.

Reversed and rendered.